OPINION
On October 21, 1998, David O. Mullins was indicted by a Franklin County grand jury on one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01; and burglary, a second-degree felony, in violation of R.C. 2911.12. The charges arose as a result of incidents which occurred on October 11, 1998, at the home of Susan Wright, with whom appellant had been involved in an "on-again, off-again," erratic, and oftentimes tumultuous relationship for several years.
A jury trial commenced in June 1999. The jury ultimately returned a not guilty verdict as to the second-degree burglary, but guilty of the lesser-included offense of fourth-degree burglary. The jury was unable to reach a unanimous decision as to the kidnapping; accordingly, the trial court declared a hung jury on that count.[1]
The trial court ordered preparation of a presentence investigation report and scheduled a sentencing hearing for a later date.
Pursuant to an entry journalized August 23, 1999, Mr. Mullins was sentenced to eighteen months' incarceration, with additional post-release control restrictions including an order to stay away from Ms. Wright and her family; and to undergo psychotherapy and substance abuse counseling.
David O. Mullins (hereinafter "appellant") has timely appealed, assigning two errors for our consideration:
Assignment of Error One
 The defendant's conviction was against the manifest weight of the evidence.
 Assignment of Error Two
 The court erred by imposing the maximum sentence for the defendant's offense.
By his first assignment error, appellant contends that his burglary conviction was against the manifest weight of the evidence. Within the body of his argument, appellant also raises issues pertaining to the sufficiency of the evidence. In addressing these distinct arguments, we first set forth the standards of review by which we are bound.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.').
Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of burglary, and/or whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
Appellant contends that the prosecution failed to prove by sufficient evidence the elements of fourth-degree burglary, which elements are set forth in R.C. 2911.12 as follows:
No person, by force, stealth, or deception, shall * * *:
* * *
 (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.
For purposes of this section, "trespass" is defined as knowingly entering or remaining on another's land or premises, "without privilege to do so." R.C. 2911.21(A)(1). "`Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position * * * or relationship, or growing out of necessity." R.C. 2901.01(A)(12).
Turning to the evidence adduced at trial, Ms. Wright testified that she attempted to end her relationship with appellant several times. When appellant would not accept the breakup, she obtained a "stalking" protection order from the court in 1997. She moved residences on two occasions in order to get away from him. In October 1997, after she obtained the stalking order, appellant tried to commit suicide. He contacted her, and she picked him up from the hospital and arranged temporary lodging for him at a hotel. She testified that she did not want him to die; she "just wanted him to leave [her] alone."
On October 11, 1998, appellant showed up, uninvited, at Ms. Wright's home to try again to convince her to see him again. He entered the house, without knocking, through her unlocked front door. She told her teenaged daughter, Stephanie, in appellant's presence, to call 911 and then to go outside with her younger brother. Appellant, who was "obviously intoxicated and high and unruly," made a threatening statement to her to the effect that "if he couldn't have me in this world, he would have me in the next." Appellant remained in her home until the police arrived to remove him.
Two police officers arrived in five to ten minutes. Officer Scott Manny testified that appellant was sitting on the couch. When the officer asked appellant if Susan Wright had invited appellant to be there, he refused to answer. Appellant later provided a statement in which he claimed that Ms. Wright had invited him to her home.
Stephanie Wright's testimony corroborated her mother's in pertinent respects. She too testified that no one gave appellant permission to be in the home, and that he was present when her mother told her to call 911.
Appellant did not testify at trial.
Appellant argues that the state failed to prove that he did not have Ms. Wright's permission to be on her property because her testimony was not credible. He emphasizes that Officer Manny testified that appellant eventually told the officer that Susan Wright had invited him to her home. This conflicting evidence was resolved by the jury in its rejection of appellant's version of the facts. In making this determination, the jury acted well within its province as factfinder. Thompkins, supra.
There was ample evidence to support a finding that appellant trespassed onto Ms. Wright's property and into her home. Accordingly, we will not disturb the jury's resolution of the evidence.
Given the state of this record, appellant's conviction was supported by sufficient evidence, and was not against the manifest weight of the evidence.
The first assignment of error is overruled.
Appellant's second assignment of error challenges the trial court's judgment as an abuse of discretion in imposing the maximum prison sentence. Given our disposition of the first assignment of error, and the fact that appellant has already served his prison sentence, this issue is moot. Therefore, the second assignment of error is overruled.
Having overruled both assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
 ________________________________ TYACK, PRESIDING JUDGE
DESHLER and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Upon application by the prosecution, a nolle prosequi was entered by the trial court pursuant to an entry filed June 25, 1999.